## BOWLES, Adm'r, OPA, v. FRUIT GROWERS CO-OP.

### Civil Action No. 1583.

District Court, E. D. Wisconsin.

July 9, 1945.

Robert P. Stebbins, Dist. Enforcement Atty., O. P. A. Office, and Francis A. Murphy, Enforcement Atty., O. P. A. Office, both of Green Bay, Wis., for plaintiff.

Lougee Stedman, of Sturgeon Bay, Wis., for defendant.

Victor M. Harding, Jr., of Milwaukee, Wis., amicus curiæ.

DUFFY, District Judge.

This is an action for treble damages. The administrator claims that the defendant co-operative association sold cherries between July 31, 1943, and September 10, 1943, at prices in excess of the maximum prices established therefor by Maximum Price Regulation No. 306, as amended, and Order 51 issued thereunder.

During the 1943 season defendant washed, pitted and graded fresh red sour cherries, packing them in various sized containers, and covering them with sugar in the proportion of 1 lb. of sugar to 4 lbs. of cherries. The containers were not hermetically sealed.

The question to be decided is: Was the defendant subject in 1943 to Maximum Price Regulation 306 as amended? Stated differently, we must determine whether the sale by defendant of freshly picked cherries, washed, graded and pitted, and deposited in unsealed cans and barrels, and over which sugar had been poured in the ratio of one part to four parts cherries, constituted the sale of canned, preserved or processed fruit within the meaning of MPR 306 as modified by Amendment 11.

The containers were not hermetically sealed. Hence the cherries were of course not canned. Nor is any contention made that they were preserved by the process described, but the administrator does insist that the cherries were processed within the meaning of the regulation. The washing, grading, and pitting of fresh cherries clearly is not processing. It is a question, however, whether the addition of sugar in the proportion heretofore stated brings them into that classification.

Par. 1341.551(e) of MPR 306 provides: " 'Processor' means the canner, manufacturer or packer, as the case may be, of any item covered by this regulation." And subsection (h) provides: " 'Packed' means processed and enclosed in any container, whether or not hermetically sealed." Such definitions are not very helpful in solving our problem. Saying in effect that a processor is one who processes is not very enlightening.

Under MPR 425 issued July 5, 1943, a price ceiling was set on sales of fresh fruits to any processor and specifically refers to "cherries, red, sour, pitted." Section 2(a) says: " 'Processor' means a person who commercially processes the fresh fruit, berry or vegetable being priced. For exam-

ple, one who cans or freezes the product being priced, or who uses it in making confectionery or bakery products, is a 'processor.'"

MPR 426 states that maximum prices are set for certain fruit including red sour cherries "by the addition of the cost of transportation (including refrigeration and other protective services) and a stipulated dollar-and-cent markup."

Plaintiff has failed to meet the burden of proof upon him to establish that the cherries sold by defendant in 1943 were processed. The evidence clearly establishes that the addition of the sugar was only a temporary expedient. One witness testified that the addition of sugar in a one to four ratio would keep the cherries from spoiling for two to three weeks providing they were kept at a low temperature. Another testified that the addition of sugar in that proportion would not prolong the life of the cherries. Assuming, and I find to be the fact, that the sugar temporarily arrests deterioration, it merely acts similar to refrigeration and does not change the cherries from the category of fresh fruit. In Corn Products Refining Co. v. Federal Trade Commission, 324 U.S. 726, 65 S.Ct. 961, 970, the court referred to the term "processing" which is undefined in the Robinson-Patman Act, 15 U.S.C.A. § 13(e), and said: " * * * While the Act does not define the term 'processing', the conversion of dextrose into candy would seem to conform to the current understanding that processing is a mode of treatment of materials to be transformed or reduced to a different state or thing. * * *" In the case at bar the cherries were not transformed or reduced to a different state or thing. They remained perishable fresh fruit.

The letter dated July 24, 1943, received by defendant from the chief counsel of the Green Bay Office of the O. P. A., while perhaps not binding on the administrator, is at least persuasive. It stated, "Cherries become processed food only when they are packed in hermetically sealed containers and sterilized by the use of heat, or when they are frozen." While this letter was concerned with rationing rather than pricing, yet where the regulation contained no adequate or understandable definition it is not surprising that in 1943 the defendant considered its product was not processed.

Also persuasive is that on July 28, 1944, the administrator issued an order to its district directors on the subject, "Marketing of Cherries," instructing them to cease granting sugar to cherry growers who were shipping fresh picked cherries over which sugar had been poured in the ratio of four to one or five to one. The order reads: "Sugar so used does nothing to preserve the cherries." The cherries in question were not rendered immune to decay and spoilage by the addition of the sugar. Sugar was added so as to enable the defendant to reach fresh fruit markets not more than nine or ten hours hauling distance and having the cherries delivered in an unspoiled condition. If the cherries had been canned or frozen or dehydrated so that spoilage would not occur for an indefinite period, they could properly be regarded as processed, but the cherries in question were not processed and the motion of the defendant for judgment will be granted.